Case 24-03263   Document 56   Filed in TXSB on 10/31/25   Page 1 of 16

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 31, 2025
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 24-34013 |
| ELISE NICOLE ARANGO, | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |
| | § | |
| MARIE DUNCAN EARTHMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 24-3263 |
| | § | |
| ELISE NICOLE ARANGO, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Marie Duncan Earthman seeks denial of Elise Nicole Arango's discharge under various provisions of 11 U.S.C. § 727. The dispute concerns Ms. Arango's prepetition transfers and financial disclosures made during the bankruptcy case. The Court heard testimony and oral arguments on April 30, 2025, June 25, 2025, and August 11, 2025. This document constitutes the Court's findings of fact and conclusions of law.

For the reasons stated below, Elise Arango's discharge is denied under §§ 727(a)(2) and (a)(4).

## BACKGROUND

### I. THE PRE-BANKRUPTCY CONDUCT

On May 15, 2023, Ms. Arango and her business partner, Katherine Marie Higgins, each purchased 50 percent equity interests in PC Boutique, LLC ("PCB") from Marie Duncan Earthman. ECF No. 34 at 1, 2. The purchase price was $2.5 million. ECF No. 34 at 2. Under

1 / 16

the purchase agreement, Arango and Higgins each made a down payment of $312,500 in cash. ECF No. 34 at 2. The remainder of the purchase price ($1,875,000) was payable in monthly installments of $62,500. ECF No. 34 at 2. In connection with the business acquisition, the parties entered into various agreements. The Security Agreement expressly granted Ms. Earthman a security interest in PCB's Collateral. ECF No. 1-6.

To fund her share of the down payment, Ms. Arango received a $297,000 loan from Howard Partridge. ECF No. 34 at 2. The loan was informally memorialized through an April 2023 text message exchange between Partridge and Arango's non-debtor husband. ECF No. 39 at 85. Partridge is Mr. Arango's longtime employer and a family friend of the Arangos. To fund the loan, Partridge took a $297,000 advance from a home equity line of credit secured by his personal residence. ECF No. 39 at 230. Partridge told Mr. Arango that the Arangos could pay only the interest on the line of credit and pay off the loan at an indefinite future date. ECF No. 39 at 87. There was no definite monthly obligation beyond the payment of interest. ECF No. 39 at 87. Partridge did not receive any commercial benefits from the loan. ECF No. 46 at 222. Although the loan was discussed between Mr. Arango and Partridge, it was the parties' understanding that Ms. Arango would be primarily responsible for paying back the loan. ECF No. 39 at 81. The parties also understood that Mr. Arango would guaranty Ms. Arango's repayment obligation.

In June 2023, Ms. Arango began making periodic payments to Partridge in the amount of $3,000 from PCB's bank account. ECF No. 26-13.

Within a year, PCB's business was faltering. Ms. Arango and Higgins tried to keep PCB afloat by borrowing funds from lenders and credit card companies. In the final months of operation, Ms. Arango and Higgins obtained a $65,000 cash advance from Credibly in exchange for the sale in the amount of $95,940.000 of PCB's future receivables. ECF No. 21 at 16.

After a year of operating PCB, Arango and Higgins defaulted on payment obligations under the $1,875,000 Note. Earthman accelerated the Note on March 2, 2024. ECF No. 21 at 11. Two days later, Arango made a $3,000 loan payment to Partridge from PCB's bank account. ECF No. 26-13.

PCB ceased conducting business on March 15, 2024. ECF No. 21 at 11. On March 25, 2024, Earthman made a $750,000.00 settlement demand to Ms. Arango and Higgins for alleged breaches under the Security Agreement. ECF No. 29-2. Three days later, Ms. Arango and Ms. Higgins rejected the demand. Earthman filed suit on April 5, 2024.

On April 22, 2024, Credibly served Ms. Arango with a demand letter to collect on the balance of the debt that Ms. Arango personally guaranteed. ECF No. 21 at 12. Credibly sued Ms. Arango on May 14, 2024.

### A.    The Watford Bend Property

Before bankruptcy, Arango and her husband owned a parcel of non-exempt real property at 5830 Watford Bend, Richmond, Texas 77471. For some period, the Arangos used the Watford Bend Property as their principal residence. ECF No. 46 at 18. When they decided to move to a different residence, they tried selling the Watford Bend Property, to no avail. ECF No. 46 at 18. The Arangos ended up renting the Property to two tenants. ECF No. 46 at 18. After property taxes increased, the Arangos tried finding prospective buyers for the Property.

The Watford Bend Property was appraised at $436,646 in 2024. ECF No. 48-2. In May 2024, Partridge purchased the Watford Bend Property for $380,000. ECF No. 46 at 74. The Arangos agreed that the net proceeds from the sale would be used to pay down the antecedent debt to Partridge. ECF No. 46 at 22. The sale of the Watford Bend Property to Partridge closed on May 13, 2024. Ms. Arango joined in signing the Warranty Deed to Partridge. ECF No. 32-8. The proceeds were deposited into the Arangos' joint bank account. On May 21, 2024, Mr. Arango paid $112,000 to Partridge. ECF No. 27-24.

### B.     The Tesla Note

On May 17, 2024, the Arangos received a $42,353 federal tax refund, which was deposited into the Arangos' joint checking account. ECF No. 24 at 7. The Arangos attempted to use the tax refund proceeds as a settlement offer in the amount of $43,353.00 to Earthman. ECF No. 30-2. The settlement offer was rejected. Three days later, the Arangos used the tax refund proceeds (with a small supplement) to pay off the balance of a note in the amount of $47,633.06 secured by a 2023 Tesla Model Y vehicle that was owned by the Arangos. ECF No. 46 at 45.

## II.    THE BANKRUPTCY PROCEEDINGS

On August 29, 2024, Mrs. Arango filed a voluntary petition under chapter 7 of the Bankruptcy Code. On September 3, 2024, Mrs. Arango filed her schedules, reflecting less than $50,000 in non-exempt property and over $1.7 million in unsecured debt. The schedules listed the Tesla as exempt property. ECF No. 24-2 at 7. But, her sworn Statement of Financial Affairs did not disclose the payment on the Tesla Note to U.S. Bank. ECF No. 24-2 at 7. The initial schedules failed to list Partridge as an unsecured creditor with a debt of $171,185.53. The SOFA omitted the sale of the Watford Bend Property, and omitted the $112,000 transfer to Partridge.

Ms. Arango amended her SOFA shortly before the first creditors' meeting to disclose the Watford Bend sale, but did not disclose the $112,000 payment to Partridge. Ms. Arango also disclosed the $47,633.06 payment to U.S. Bank on account of the Tesla Note. ECF No. 31-1 at 4.

Ms. Arango made periodic payments to Partridge during the pendency of this bankruptcy case. Some payments were made from the operating account of her business, EK the Boutique ("EKB")[1]. ECF No.

---

[1] Ms. Arango and Higgins operated "EK the Boutique" after PCB stopped conducting business.

26-13. Some payments were made from the Arangos' joint checking account. ECF No. 26-13.

On December 9, 2024, Earthman commenced this adversary proceeding. On Christmas Eve, Mrs. Arango amended her schedules to list Partridge as a creditor. She had previously testified under oath both at her creditor's meeting and her Rule 2004 examination that Partridge was not a creditor of hers. ECF Nos. 31-6 at 3, 31-8 at 4, 31-9 at 112. This false testimony appears to be a misplaced attempt to hide the Partridge transaction from scrutiny. The problem with this transaction is that funds that would otherwise have been available in her bankruptcy estate were dissipated to pay an insider. *See infra* p. 8. It is substantively irrelevant whether Partridge was her creditor or her husband's creditor. The only conceivable purpose of the false testimony was to avoid disclosure and scrutiny.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## DISCUSSION

A key tenet of the bankruptcy discharge is to afford a debtor a "fresh start" by releasing her from further liability for old debts. *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 364 (2006). But this privilege is not absolute. Section 727(a) of the Code identifies conduct that can preclude a chapter 7 debtor from receiving a discharge. Section 727 is designed "to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." *Palmacci v. Umpierrez (In re Umpierrez)*, 121 F.3d 781, 786 (1st Cir. 1997).

Earthman asks the Court to deny discharge of Mrs. Arango's debts under §§ 727(a)(2), (a)(3), (a)(4)(A), and (a)(5). Each will be taken in turn.

I. SECTION 727(a)(2)

> Section 727(a)(2) provides:
>
> (a) The Court shall grant the debtor a discharge, unless—
>> . . . .
>>
>> (2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>>> (A) property of the debtor, within one year before the date of the filing of the petition . . .
>>> (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).

To prevail on a claim under § 727(a)(2)(A), the plaintiff must establish four elements: (1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate. *The Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 698 (5th Cir. 2009) (citing *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989)). Proof of actual intent can be inferred from the debtor's actions and circumstantial evidence. *Id.*

To evaluate evidence of actual intent to defraud under § 727(a)(2), courts within the Fifth Circuit look at the following six factors:

> (1) The lack or inadequacy of consideration;
>
> (2) The family, friendship, or close associate relationship between the parties;
>
> (3) The retention of possession, benefit or use of the property in question;
>
> (4) The financial condition of the party sought to be charged both before and after the transaction in question;

(5) The existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debtor, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry.

*Id.*

Here, Earthman alleges that three improper transfers occurred within one year of the petition date justifying denial of discharge under § 727(a)(2):

- On May 10, 2024, Ms. Arango conveyed the Watford Bend Property to Partridge. ECF No. 32-8.

- On May 13, 2024, the Watford Bend sale closed and the sale proceeds in the amount of $112,000 were transferred from the Arangos' joint bank account to Patridge. ECF No. 27-24.

- In May 2024, Ms. Arango used the proceeds of a tax refund to pay off the Note on her exempt Tesla vehicle.

### A.   The Watford Bend Property

The Watford Bend sale issue consists of two transfers for purposes of § 727(a)(2): (1) The transfer of the Property to Partridge, and (2) the use of the net proceeds to pay down the debt owed to Partridge. With respect to the transfer of the Watford Bend Property, Ms. Arango attempts to disavow this conduct based on her allegations that her husband ran the family finances, and that he alone decided to make the transfer. The facts do not support her allegations. Ms. Arango personally signed the Deed transferring the property to Partridge. ECF No. 32-8. With respect to the transfer of the sale proceeds in the amount of $112,000 to Partridge, Ms. Arango testified at trial that she knew the purpose of the sale was to use the sale proceeds to pay down the debt owed to Partridge. ECF No. 46 at 112. The $112,000 transfer came from

the Arangos' joint bank account, which was her community property. That community property interest would have become estate property, but for the transfer to Partridge. *See* § 541(a)(2).

The nature of these transfers and Ms. Arango's relationship with Partridge, require the Court to consider whether Partridge is an insider for purposes of § 727(a)(2). Partridge is not a statutory insider within the definition of § 101(31). But the Fifth Circuit requires courts to determine insider status by looking at the following factors: (1) the closeness of the relationship between the transferee and the debtor; and, (2) whether the transactions between the transferee and the debtor were conducted at arm's length. *See Browning Ints. v. Allison*, 955 F.2d 1008, 1011 (5th Cir. 1992).

With respect to the first factor, the record shows that Partridge is Mr. Arango's long-time employer and mentor. The Arangos have stayed at Partridge's vacation home with and without his presence multiple times. ECF No. 39 at 218–19. The Arangos attended Partridge's son's wedding. ECF No. 46 at 83. Ms. Arango's husband has worked for Partridge for his entire adult life. ECF No. 39 at 217. Although the relationship's foundation was Mr. Arango's long-term employment, the relationship itself was also a close personal one.

With respect to the second factor, Ms. Arango's transactions with Partridge were not conducted at arm's length. The loan lacked any formality and was memorialized only by a text message between Partridge and Mr. Arango. Patridge testified that "it didn't matter" whether his loan was going to get paid back or not. ECF No. 46 at 223. The agreement did not impose any monthly payment obligations on the Arangos. Partridge reaped no commercial benefits from extending the loan. The transfer of the Watford Bend Property was to pay down the antecedent debt owed to Partridge. Partridge is an insider for purposes of § 727(a)(2).

The Watford Bend Property was not claimed as exempt. The equity in the property could have benefitted other creditors. There are several badges of fraud present here. The proximity of the sale to the Petition Date, the transaction with an insider, and the use of the proceeds to pay down the debt to the insider establish the requisite

intent to hinder and delay creditors. Denial of discharge is granted under § 727(a)(2) with respect to the transfer of the $112,000 of Watford Bend proceeds[2].

### B. The Tesla Note Payoff

With respect to the payoff of the Tesla vehicle Note, the issue is whether Arango's transfer of cash to an exempt asset was made with intent to hinder or delay creditors. Conversion of cash to an exempt asset is not fraudulent *per se*. *See NCNB Tex. Nat'l Bank v. Bowyer (In re Bowyer)*, 932 F.2d 1100, 1102 (5th Cir. 1991) ("[T]he mere conversion of non-exempt property into exempt property on the eve of a bankruptcy was not of itself such fraud as will deprive the bankruptcy of his right to exemptions."). But that privilege ends when the conversion is motivated by an intent to hinder or delay creditors. *See First Tex. Sav. Assoc., Inc. v. Reed (In re Reed)*, 700 F.2d 986, 992 (5th Cir. 1983) (noting that "mere conversation is not be considered fraudulent unless other evidence proves actual intent to defraud creditors").

Ms. Arango paid off the Note on her Tesla 101 days before she filed her bankruptcy petition. At that time, she had already retained bankruptcy counsel and was defending the Earthman and Credibly lawsuits against her. In her initial schedules filed in August 2024, Mrs. Arango disclosed her interest in the Tesla vehicle but did not disclose the payoff to U.S. Bank until September 24, 2024. Case No. 24-34013, ECF No. 4 at 59, 64. The omission came to light when the Chapter 7 Trustee uncovered the pay off. Ms. Arango said at the creditor's meeting that it was her and her husband's decision to pay the Note "to free up some monthly income." ECF No. 31-3 at 11. Considering the temporal relationship between Ms. Arango's impending bankruptcy filing, the

---

[2] Earthman also alleges that the purchase price was not at fair market value. The purchase price was $380,000.00. Earthman alleges that the 2024 Fort Bend County Appraisal District appraised value for the Property was $436,636.00. The purchase price was 13 percent below appraisal value. The Court finds that the consideration was not grossly inadequate for purposes of § 727(a)(2). No commission was paid on the sale. Assuming a standard 6% commission, the net price only about 7% below market. Nevertheless, the two transactions were designed to pay Partridge the $112,000. It is that actual and intended outcome that causes the denial of discharge.

impending lawsuits, and the non-disclosure of the payoff, the Court finds that Ms. Arango paid the debt on the vehicle to convert cash into a non-exempt asset with an intent to hinder and defraud creditors. Although a far closer call than the Watford transactions, the payoff of the Note, at a minimum, provides further evidence of the overall plan to hinder and delay creditors.

### C. Spousal Liability

Ms. Arango's argument that her husband alone managed finances and directed these transactions is not legally sufficient to avail herself of the discharge. The Fifth Circuit holds that fraudulent intent may not be imputed between spouses solely on marital relationship. *See Allison v. Roberts (In re Allison)*, 960 F.2d 481, 485–86 (5th Cir. 1992). But knowledge and a "great or unusual" degree of benefit to the marital community may infer that the "innocent" spouse engaged in fraudulent activity. *See Cardiovascular Surgery of Alexandria, LLC v. Kerry*, No. 10-1003, 2011 WL 672244, at *4 (Bankr. W.D. La. Feb. 17, 2011). The "innocent" spouse defense is inapplicable here. Ms. Arango participated in the sale of the Watford Bend Property and knew that the sale proceeds were to be used to pay off the antecedent debt owed to Partridge.

> BEESON: Okay. You knew that the house had been sold to Howard long before you filed your bankruptcy schedules?
>
> ARANGO: I don't know the exact date that the house was sold. I wasn't paying attention. I didn't have anything to do with it, so I wasn't paying attention.
>
> BEESON: Well, we just looked at the deed, and the deed is dated May 13th right?
>
> ARANGO: Can I please see again?
>
> BEESON: The deed is 133. You'll see the date —
>
> ARANGO: Okay.

> BEESON: It's signed on May 10th, 2024 to become effective May 13th, 2024, correct?
>
> ARANGO: Okay, then yes.
>
> BEESON: Okay. And you signed this document, as we established.
>
> ARANGO: Yes.
>
> . . . .
>
> BEESON: You knew that the house was being sold when you signed this warranty deed?
>
> ARANGO: Yes, but I hadn't filed bankruptcy yet or done my schedules yet.
>
> . . . .
>
> BEESON: At the time of the sale, in May of 2024, you knew that the purpose of the transaction was to pay down the outstanding loan to Mr. Patridge, right?
>
> ARANGO: Yes.

ECF No. 46 at 111–12.

She also made the decision with her husband to pay off the Tesla vehicle Note.

> SOMMERS: And then on — No. 37 on your trustee questionnaire also indicated that U.S. Bank — U.S. Bank received 47 —
>
> ARANGO: Yes, sir.
>
> SOMMERS: — .6 thousand?
>
> ARANGO: Yes, sir. That was our tax refund from 2023. My husband — well, first of all, we offered that to Ms. Earthman to help settle some of the debt that I owe her, and she declined. So then we went to our next

> creditor, which was my husband's car, and we paid it off to free up some monthly income.

ECF No. 31-3 at 10–11.

This explanation makes little sense. The total monthly payment on the Tesla was only about $1,000.00. ECF No. 39 at 125. For a family in financial distress, retention of the $42,353 would have been far more important than the small reduction in monthly expenses. The true reason is that the retention of the $42,353 would have enabled Earthman to receive a greater distribution from the anticipated bankruptcy case.

Ms. Arango's testimonies show that she was not merely an uninvolved spouse lacking knowledge of her husband's conduct. The record reflects her acquiescence and affirmative cooperation regarding the transfer of the Watford Bend Property and the payoff of the Tesla Note. These transactions conferred a substantial benefit to the marital estate and a substantial diminishment to the bankruptcy estate.

Ms. Arango is denied her discharge under § 727(a)(2).

## II.  SECTION 727(a)(3)

Section 727(a)(3) denies discharge if:

> The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

§ 727(a)(3)

The moving party bears the initial burden to prove that the debtor failed to keep and preserve their financial records and that this failure prevented creditors from ascertaining their financial condition. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003). The financial records need not be perfect; as long as there is written evidence of the debtor's financial condition, denial of discharge under

§ 727(a)(3) is disfavored. *See Goff v. Russell Co. (In re Goff)*, 459 F.2d 199, 201 (5th Cir. 1974). The level of the debtor's sophistication and the extent of the business activities are considered to determine the adequacy of the bookkeeping. *Id.* at 201–02. If the moving party meets this burden, the debtor must prove that the inadequacy was justified under the circumstances. *Id.*

At trial, Mrs. Arango's level of business sophistication was pulled into question. The inquiry into justification for failure to keep adequate business records includes: the debtor's education, experience, and sophistication; the volume of the debtor's business, the complexity of the debtor's business; the amount of credit extended to the debtor in her business; and any other circumstances that should be considered in the interest of justice. *Womble v. Pher Partners (In re Womble)*, 108 Fed. App'x 993, 996 (5th Cir. 2004).

Ms. Arango is not unsophisticated. She graduated from college. She was a business owner since 2017. ECF No. 39 at 178. She and her business partner purchased a $2.5 million business from Earthman. ECF No. 39 at 171. She executed loan documents to borrow hundreds of thousands of dollars for operating capital. ECF No. 39 at 92, 93, 120, 121. She employed capable attorneys to advise her.

Her business' financial statements contained numerous errors. PCB's March 15, 2024 Balance Sheet omitted debts owed to certain creditors. ECF No. 27-5. It also misrepresented certain line items. EKB's August 31, 2024 Balance Sheet also omitted credit card debts to certain creditors and failed to explain certain line items. ECF No. 28-7. The recordkeeping was imperfect in several respects. However, it does not rise to level of inadequacy to deny discharge under § 727(a)(3). *See, e.g., Womble*, 108 Fed. App'x at 995–96 (finding that the debtor failed to maintain **any** written records of loans and leases, failed to file tax returns for five years, and took money from entities without records). Here, the Trustee and Earthman managed to piece together Mrs. Arango's financial condition.

These acts and omissions do not independently warrant denial of discharge under § 727(a)(3).

### III.  SECTION 727(a)(4)

Section 727(a)(4)(A) denies discharge if: "[T]he debtor knowingly and fraudulently, in or in connection with the case— . . . made a false oath or account[.]"  To establish a false oath under § 727(a)(4), the movant must show that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.  *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005) (quoting *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 179 (5th Cir. 1992) (quotations omitted)).  Omitting an asset on the schedules can constitute a false oath.  *See id.*

Ms. Arango's initial sworn schedules and SOFA omitted the following information:

- The personal loan from Partridge in the amount of $297,000.

- The Sale of the Watford Bend Property and the $112,000 payment to Partridge.

- The $47,633.06 payment note payment to U.S. Bank.

- Rental income and deposits from the Watford Bend tenant.

Each omission concerns a significant asset or transfer occurring within months of the petition date.  In determining whether a subject matter of a false oath is material, the Court looks at whether the subject matter bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property.  *In re Pratt*, 411 F.3d at 566.  The inquiry does not look at the value of the omitted assets or whether the omission was detrimental to creditors.  *Id.*

Ms. Arango signed her schedules under penalty of perjury.  She admitted she had access to the family joint bank account and she personally prepared the filings.  Her husband testified that he did not review them or supply financial data.  ECF No. 46 at 27, 28.  When

confronted about the inaccuracy of her sworn statements at trial, Ms. Arango answered that she "did a horrible job" completing the documents. ECF No. 39 at 169. Her statement does not mitigate her liability. Neither does the fact that she later amended her schedules afford her relief. Her testimony establishes that she neither verified the accuracy of her disclosures nor sought to ensure their completeness. Fraudulent intent for the purposes of § 727(a)(4) may be demonstrated "through the cumulative effect of a large number of falsehoods in a debtor's schedules as evidence of a reckless disregard for the truth." *Crumley v. Crumley (In re Crumley)*, 428 B.R. 349, 366–67 (Bankr. N.D. Tex. 2010). A debtor has the duty to "carefully consider all of the questions posed on the petition, schedules, and statements, and to verify that all information listed is correct." *Id.* at 368.

The record reveals that Ms. Arango did not satisfy that duty in this case. Ms. Arango's sworn filings were neither complete nor candid. She failed to disclose multiple transfers and assets that were central to her financial affairs. Her omissions were not isolated mistakes but part of a pattern of concealment. Each omission directly relates to the debtor's assets and financial transactions. Considering the cumulative effect of the omissions, the Court finds that Ms. Arango either intentionally or recklessly disregarded of the truth.

Mrs. Arango is not entitled to discharge under § 727(a)(4).

## IV.    SECTION 727(a)(5)

Section 727(a)(5) denies discharge to a debtor who has "failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The movant has the initial burden of producing evidence that demonstrates that the debtor owned substantial, identifiable assets that are now unavailable for distribution to creditors. *In re Dung Anh Phan*, 607 B.R. 598, 613 (Bankr. S.D. Tex. 2019). If the movant satisfies this burden, the burden shifts to the debtor, who has to establish a "satisfactory" explanation for the asset reduction. *Id.* A "satisfactory" explanation is measured by the credibility of the proffered explanation, not whether the explanation is meritorious. *Id.* Nevertheless, the debtor's explanation cannot consist

merely of "vague, indefinite, and uncorroborated hodgepodge of financial transactions." *Keils v. Villarreal (In re Villareal)*, 666 B.R. 157, 158 (Bankr. N.D. Tex. 2024).

Before the Petition Date, Mrs. Arango owned the Watford Bend Property and tax refund consisting of cash in the amount of $42,353.00. On the Petition Date, Mrs. Arango did not own those assets. As Earthman correctly points out, Mrs. Arango's initial schedules and SOFA did not explain the loss of those assets.

While her omission of these assets contributed to the loss of her discharge under other provisions of § 727, Mrs. Arango met her burden under § 727(a)(5) by establishing a satisfactory explanation for the loss in assets at trial. She testified that the sale proceeds of the Watford Bend Property were used to pay down the antecedent debt owed to Partridge. She testified that the tax refund was used to pay off the Note on the Tesla vehicle. Her testimony is corroborated by bank statements. Mrs. Arango has overcome her burden of providing a satisfactory explanation for the reduction of assets.

Grounds do not exist to deny Mrs. Arango's discharge under § 727(a)(5).

## CONCLUSION

A separate order will be entered.

SIGNED 10/31/2025

_____
Marvin Isgur
United States Bankruptcy Judge